# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-1832V

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * <br> SUSAN BRYCE, <br><br> Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND <br> HUMAN SERVICES, <br><br> Respondent. <br> * * * * * * * * * * * * * * * * * * * * * * * * * * | * <br> * <br> * <br> * <br> * Special Master Katherine E. Oler <br> * <br> * <br> * <br> * <br> * Filed: July 18, 2023 <br> * <br> * <br> * <br> * <br> * <br> * |

*Mark Sadaka*, Law Offices of Sadaka Associates, Englewood, NJ, for Petitioner
*Meghan Murphy*, U.S. Department of Justice, Washington, DC, for Respondent

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On January 30, 2017, Susan Bryce ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleges that she developed vaccine-induced idiopathic thrombocytopenia ("ITP") and residual mononeuropathy as a result of the influenza ("flu") vaccine she received on December 18, 2016. Pet. at 1.

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on January 23, 2023, requesting a total of $58,805.27. ECF No. 83 at 1 (hereinafter "Fees Application" or "Fees App."). Respondent filed a response (hereinafter "Fees Response" or "Fees Resp.") on February 6, 2023,

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. Fees Resp. at 3, ECF No. 84. If I determine that an award of interim fees and costs is appropriate, Respondent "respectfully recommends that the Special Master exercise her discretion and determine a reasonable award for attorney's fees and costs." *Id.* at 4. Petitioner filed file a reply on February 6, 2023. Fees Reply, ECF No. 85.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$58,305.27** in interim attorneys' fees and costs.

## I.     Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

2

### B. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable

3

basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II. Discussion

### A. Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). In this case, Petitioner's attorney has been working on this case since 2017. Fees App., Ex. A at 27. Additionally, Petitioner has retained two experts at a substantial cost. Ex. A at 28. The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees).

Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

**B. Good Faith and Reasonable Basis**

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. at 2-3. I find that the petition was filed in good faith.

With regards to reasonable basis, Petitioner submitted two expert reports. Petitioner has submitted an expert report from Dr. Clinton Merritt, a board-certified oncologist and hematologist, who opined that Petitioner's ITP was caused by the flu vaccine she received. Ex. 22 at 2-3. Petitioner then filed an expert report from Dr. Joseph Jeret, a board-certified neurologist, who opined that the neuropathic pain that Petitioner experienced before vaccination was different from the neuropathic pain she experienced post-vaccination. Ex. 45 at 12-13.

This constitutes sufficient evidence to establish a reasonable basis for the claim. As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

**C. Attorneys' Fees**

Petitioner requests a total of $44,769.22 in attorneys' fees.  Fees App., Ex. A at 27.

1. <u>Reasonable Hourly Rate</u>

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

---

[3] The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Fo

Petitioner's counsel, Mr. Mark Sadaka, requests a rate of $376.38 for 2017; $396.00 for 2018; $405.00 for 2019; $422.00 for 2020; $444.00 for 2021; and $458.00 for 2022. Fees App., Ex. A at 27. Mr. Sadaka also requests rates ranging from $145.17 to $177.00 per hour for paralegal work performed between 2017 and 2022. *Id.*

This request is consistent with what I and other special masters have previously awarded Mr. Sadaka and his paralegals. *See*, *e.g.*, *Jeter as Estate of Jeter v. Sec'y of Health & Hum. Servs.*, No. 18-1649V, 2023 WL 2751603 (Fed. Cl. Spec. Mstr. Apr. 3, 2023); *Vance v. Sec'y of Health & Hum. Servs.*, No. 15-675V, 2023 WL 2534597 (Fed. Cl. Spec. Mstr. Mar. 16, 2023); *Malar v. Sec'y of Health & Hum. Servs.*, No. 18-1429V, 2022 WL 2663240 (Fed. Cl. Spec. Mstr. Jun. 16, 2022); *Fisher v. Sec'y of Health & Hum. Servs.*, No. 18-1705V, 2022 WL 2299985 (Fed. Cl. Spec. Mstr. Apr. 26, 2022*); Nemmer v. Sec'y of Health & Hum. Servs.*, No. 17-1464V, 2020 WL 1910695 (Fed. Cl. Spec. Mstr. Feb. 20, 2020). Accordingly, I find the requested rates are reasonable and that no adjustment is warranted.

   2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the

---

rum-Rate-Fee-Schedule-2021-PPI-OL.pdf

The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.

The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

6

reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

  a. *Clerical and Administrative Time*

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The hours billed by Mr. Sadaka and his paralegals include examples of clerical and administrative tasks and general overbilling for receiving CM/ECF notifications that do not take six minutes to review. Examples include (but are not limited to):

- November 28, 2017 (0.1 hours): "Draft notices of filing of medical records re: exhibits #1-10.
- November 28-29, 2017 (0.4 hours total): "Review/revise notices of filing"; "Receive/review Initial Order"; "Received/review order re: Attorney's Fees and Costs"; "Receive/review Notice of Appearance"
- January 8, 2018 (0.1 hours): "Draft notice of filing Affidavit re: exhibit 11"
- January 29, 20218 (0.2 hours total): "Receive/review order of reassigning case"; "Receive/review notice of reassigning"
- July 20, 2018 (0.1 hours): "Receive/review order re: 240-day"
- August 3, 2021 (2.0 hours total): Draft notices of filing for exhibits 1-40

My colleagues and I have previously warned Mr. Sadaka that attorneys' fees for clerical and administrative tasks are not reimbursable in the Program, and we have reduced his requested attorneys' fees accordingly. *See*, *e.g.*, *Fisher v. Sec'y of Health & Hum. Servs.*, No. 18-1705V, 2022 WL 2299985 (Fed. Cl. Spec. Mstr. Apr. 26, 2022*); Nemmer v. Sec'y of Health & Hum. Servs.*, No. 17-1464V, 2020 WL 1910695 (Fed. Cl. Spec. Mstr. Feb. 20, 2020); *Nifakos v. Sec'y of Health & Hum. Servs.*, No. 14-236V, 2018 WL 7286553 (Fed. Cl. Spec. Mstr. Dec. 12, 2018); *Brown v. Sec'y of Health & Hum. Servs.*, No. 14-235V, 2018 WL 818231 (Fed. Cl. Spec. Mstr. Jan. 18, 2018); *Tarsell v. Sec'y of Health & Hum. Servs.*, No. 10-251V, 2018 WL 3989452 (Fed Cl. Spec. Mstr. Jul. 31, 2018). Because these tasks were mostly completed by paralegals, I shall apply a $500.00 reduction to Petitioner's attorneys' fees.

Total attorneys' fees to be awarded: $44,269.22

 **D. Reasonable Costs**

Petitioner requests a total of $14,036.05 in costs, which includes obtaining medical records, the Court's filing fee, Drs. Merrill and Jeret's expert fees, Dr. Gershwin's retainer, and other mailing expenses. Fees App., Ex. A at 27-28. Documentation was provided for the medical record requests and the Court's filing fee, which totals $723.51, therefore these will be paid in full. I discuss the other requests below.

1. Petitioner's Expert Costs for Dr. M. Eric Gershwin, M.D.

Petitioner requests $2,500.00 for Dr. Gershwin's retainer. Dr. Gershwin did not submit an expert report in this case. Special masters have awarded attorneys' costs for an expert's retainer if the expert reviewed the records, even if no expert report is filed. *See*, *e.g.*, *Kodimer v. Sec'y of Health & Hum. Servs.*, No. 17-140V, 2019 WL 3074015 at *2 (Fed. Cl. Spec. Mstr. June 17, 2019); *Forrest v. Sec'y of Health & Hum. Servs.*, No. 10-32V, 2018 WL 3029330 (Fed. Cl. Spec. Mstr. May 22, 2018); *Glaser v. Sec'y of Health & Hum. Servs.*, No. 06-764V, 2016 WL 4483022 (Fed. Cl. Spec. Mstr. June 29, 2016). Thus, I will grant Dr. Gershwin's retainer fee in full.

2. Petitioner's Expert Costs for Dr. Clinton Merrill, M.D.

Dr. Clinton Merrill submitted one expert report in this case. Ex. 22. Dr. Merrill is requesting compensation at an hourly rate of $400.00 for 3.5 hours spent reviewing medical records, totaling $1,400.00, and a $1,000.00 retainer. An invoice was not provided for the time spent writing the expert report, so I can only assume the retainer represents Dr. Merrill's time and work on the expert report.

Regarding Dr. Merrill's hourly rate, no other special master has determined whether his requested hourly rate is reasonable. *See Johnson on behalf of P.J. v. Sec'y of Health & Hum. Servs.*, No. 19-163V, 2023 WL 1948637 at *3 (Fed. Cl. Spec. Mstr. Jan. 24, 2023) (granting Dr. Merrill's expert fees in full with no specific analysis). At this juncture, I will grant Dr. Merrill's expert costs in full, as the total amount is not unreasonable for an expert report. I grant these costs without a determination of the reasonableness of Dr. Merrill's hourly rate.

3. Petitioner's Expert Costs for Dr. Joseph Jeret, M.D.

Petitioner requests expert costs for Dr. Joseph Jeret. Dr. Jeret requests an hourly rate of $500.00 for 16.75 hours of work performed, totaling $8,375.00. Ex. B at 16. Dr. Jeret was previously awarded his requested hourly rate of $500.00. I agree that this rate is appropriate. *See Bristow v. Sec'y of Health & Hum. Servs.*, No. 19-457V, 2022 WL 17821111 at *6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (reducing Dr. Jeret's requested hourly rate from $550/hour to $500/hour). A complete invoice was submitted, and Dr. Jeret's hours appear to be reasonable. Accordingly, his requested expert costs will be granted in full.

4. Mailing Expenses

Petitioner also requests reimbursement for mailing expenses. Of the $37.54 requested, $3.30 of the expenses lacked documentation, but I consider these as normal business expenses, and will grant the amount in full.

Total costs to be awarded: **$14,036.05**

### III.  Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$58,305.27**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and her attorney, Mr. Mark Sadaka.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[4]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.